ROBERT M. MURPHY, administrator, *vs.* JAMES F. CONWAY.

Suffolk. September 19, 1971. — January 10, 1972.

Present: TAURO, C.J., CUTTER, REARDON, & BRAUCHER, JJ.

*Doctor. Proximate Cause. Negligence,* Doctor. *Evidence,* Opinion: expert; Cumulative. *Error,* Whether error harmful.

At the trial of an action for medical malpractice wherein the plaintiff alleged that the defendant's failure to diagnose and treat a sore throat of the decedent, prior to her admission to a hospital for delivery of a child, led to the decedent's death after delivery by caesarian section, the trial judge correctly instructed the jury that the plaintiff could not recover on a count for wrongful death unless the jury believed testimony by the plaintiff administrator, husband of the decedent, that the defendant had admitted negligence where there was no expert testimony establishing any causal relationship between the defendant's alleged negligent failure to diagnose and treat the decedent's sore throat and an abdominal streptococcus infection which resulted in her death. |748-749|

At the trial of an action for malpractice causing death, the trial judge correctly treated a statement in an autopsy report, that it was plausible to assume that the decedent brought a streptococcus infection with her into a hospital, as mere conjecture and not as an expert opinion where the statement was not based on an examination of the corpse but was merely inferred from the fact that no streptococci were found in cultures taken from employees working on the operating room floor at the time of an operation on the decedent. |749-750|

Any error in excluding proffered testimony at the trial of an action was harmless where such testimony would have been merely cumulative of other testimony. |750|

TORT. Writ in the Superior Court dated November 12, 1964.

The action was tried before *Roy, J.*

The case was submitted on briefs.

*Thomas B. Shea & Joseph A. Caulfield* for the plaintiff.

*Charles J. Dunn* for the defendant.

TAURO, C.J. In an action of tort for medical malpractice, the jury returned a verdict for the defendant on the first count for wrongful death and the trial judge directed a verdict for the defendant on the second count for conscious suffering. The plaintiff's exceptions are to a certain portion of the judge's charge to the jury,[1] to his order for a directed verdict on count 2, and to the exclusion of certain evidence.

The pertinent evidence is summarized. The decedent was under the care of the defendant during her pregnancy, and approximately forty hours after delivery by caesarian section, she suffered a cardiac arrest and died on November 15, 1962. According to the autopsy report, the cause

---

[1] The pertinent portions of the judge's charge to the jury are: "[T]here is not in this case medical evidence upon which you could base a finding of causal connection between the failure to treat a sore throat, even if it be a streptococci sore throat and the ensuing cause of death, which was peritonitis involving the streptococci organisms. . . . [The case] is being submitted to you for your consideration because if the alleged admissions of Dr. Conway were indeed made . . . then the whole void in this case would be cured by your acceptance of those admissions. . . . If you find . . . [admissions were not made] then . . . the rest of the evidence is not sufficient . . . and it would then be your duty to return a verdict for the defendant."

of death was "overwhelming [streptococci] infection," and
the most likely portal of entry was the peritoneum, a smooth
membrane which lines the walls of the abdomen.    The
plaintiff, husband of the decedent, testified that his wife
suffered from a sore throat and fever and was generally in
a weak and tired condition on November 8, when she last
visited the defendant prior to admission to the hospital.
The plaintiff also testified that these symptoms continued,
and in addition, his wife developed chills and sweats, from
November 8 until her admission on November 12.   The de-
fendant denied any knowledge of such symptoms on or be-
fore November 12.    Hospital records placed in evidence
indicated that, on November 12, the decedent had a below
normal temperature (ninety-seven degrees) and that, on
November 13 prior to delivery, she had a tremor with a
cold, clammy skin.   The defendant's testimony was that
there was nothing in the decedent's condition ascertained
from physical examination, from complaints and past his-
tory and from hospital charts which reasonably required the
defendant to test for the presence of streptococcus infection,
nor to administer antibiotics beyond the normal, limited
dose ordered for prophylactic reasons after a delivery, nor
to delay the caesarian section.

The plaintiff alleges, in effect, that the failure of the de-
fendant to diagnose and treat the decedent's alleged illness
prior to delivering her by caesarian section constituted
negligence which led to her conscious suffering and to her
death.

Concerning the instructions to the jury, the plaintiff
maintains that it was error for the judge to charge that the
evidence was "not sufficient for the plaintiff to recover"
unless the jury believed the plaintiff's testimony to the
effect that the defendant had made an admission as to "im-
proper, unskillful, [and] negligent treatment." [2]   There

[2] We note, also, that the alleged admission by the defendant was com-
pletely unsupported by substantive evidence of negligence.   The judge
properly called to the jury's attention the possible significance of an alleged
admission of fault in malpractice cases and that the jury should consider

was no error. Even assuming, arguendo, that there was evidence tending to show that the defendant was negligent in not diagnosing and treating the decedent for a sore throat and related symptoms prior to November 13, there was no expert medical evidence on which the jury could have based a finding of a causal connection between this failure and the streptococcus infection which resulted in death. The trial judge accurately stated the law with respect to proof of causal relationships in medical malpractice cases: "It is the obligation of the plaintiff to show the causal relation . . . between any failure of the doctor and the ensuing death. Those relationships, the causal relationship in most cases of this nature, require some expert medical testimony. . . . [For this reason,] jurors are not entitled and are not permitted to decide vital portions . . . by way of conjecture or surmise or guessing." See *Semerjian* v. *Stetson,* 284 Mass. 510, 515; Louisell & Williams, Medical Malpractice, § 11.02, and cases cited. Cf. *Riggs* v. *Christie,* 342 Mass. 402, 405–407.

In this case, both the defendant and his assistant in the caesarian operation testified that they saw no indication of peritoneal infection when the decedent was opened up on November 13. It is true that the autopsy report contains the statement, "[I]t is perhaps most plausible to assume that the patient brought the organism with her." However, as the full text of the autopsy report indicates, the statement was not based on an examination of the corpse but was merely an inference drawn from the fact that no streptococci were found in cultures taken of employees working on the operating room floor. The trial judge correctly discounted this assumption as little more than "conjecture and surmise" and not entitled to be treated as expert opinion. The plaintiff in fact presented no medical evidence that any streptococcus virus was present in the decedent's

carefully, in particular circumstances, whether testimony concerning such an alleged admission deserves credence. *Manzoni* v. *Hamlin,* 348 Mass. 770. *Barrette* v. *Hight,* 353 Mass. 268, 271, n. 3.

throat on November 8 or November 13, or at any time in between. The autopsy report suggests the contrary: that the infection originated in the peritoneum itself. Nor was there medical evidence as to how and in what manner streptococci, even if present in some part of the decedent's body before the operation, might have reached the abdominal area. The evidence is insufficient to establish the probability that the decedent would have lived longer or suffered less even if the defendant had diagnosed and treated the decedent's sore throat and related symptoms during the period November 8 to November 13. *Wright* v. *Clement,* 287 Mass. 175, 176. Cf. *King* v. *Belmore,* 248 Mass. 108, 113–114.

We need not decide whether it was error to direct a verdict on the second count. The correctness of the ruling becomes immaterial in view of the jury's apparent rejection of the alleged admission. In the absence of such an admission the jury were not warranted in returning a verdict for the plaintiff on either count. Moreover, there was no medical evidence that the defendant's treatment of the decedent was contrary to sound medical practice. *Barrette* v. *Hight,* 353 Mass. 268. "[C]ommon experience and knowledge of a jury of laymen cannot supply the lack." *Semerjian* v. *Stetson,* 284 Mass. 510, 515.

Other matters argued by the plaintiff are without merit and do not require extended discussion.[3]

*Exceptions overruled.*

---

[3] While the trial judge may have incorrectly excluded a proffer of testimony from a friend that the decedent had told the friend on November 8 of having a sore throat, chills, and a fever (see *Tafralian* v. *Metropolitan Life Ins. Co.* 316 Mass. 429, 430–431), any possible error was harmless because the testimony excluded was cumulative inasmuch as there was testimony by the plaintiff husband describing the same symptoms.