KATHLEEN HELD *vs.* RICHARD BAIL. No. 88-P-874. December 8, 1989. *Negligence*, Medical malpractice, Proximate cause. *Proximate Cause. Medical Malpractice*, Expert opinion.

On the basis of the evidence, viewed most favorably to Kathleen Held, the plaintiff, the jury could have found the following. Held was a clinical laboratory assistant at Harvard Community Health Plan (HCHP) from May 5, 1975, to September, 1979. On April 12, 1979, she suffered a sudden onset of severe abdominal distress. A fever developed, which Held reported by telephone to her primary nurse practitioner at HCHP, Laura Stanley. Nurse Stanley recommended over-the-counter medication for Held's diarrhea, aspirin for fever, and liquids. On Sunday, April 15, 1979, things took a turn for the worse and Held called the emergency operator at HCHP, to whom she mentioned that a laboratory colleague, with whom she had shared lunch, had been exposed to a salmonella bacterium. The emergency operator suggested palliative measures and advised Held to come in to HCHP to be tested for salmonella. When Held came in on April 17, 1979, she was seen by Nurse Stanley, to whom Held recounted her conversation with the emergency operator about a salmonella test. At

that time Held had improved somewhat and Stanley concluded that a test for salmonella was not indicated.

Held felt sufficiently well to return to work but on April 25, 1979, she began to run a fever again. On April 27, she spoke with her primary physician at HCHP, the defendant, Dr. Bail. Once again, Sunday, which fell on April 29, 1979, was a bad day for Held. She felt so markedly worse that she was moved to call HCHP and spoke to a Dr. Miller, the physician on call. The latter asked Held to meet him at the emergency room at Cambridge City Hospital. There Dr. Miller examined Held, advised her to continue taking analgesics and to call if her problems persisted. Dr. Miller subsequently reported to Dr. Bail that he suspected Held was in the early stages of viral hepatitis. Her condition became sufficiently aggravated so that Held called Dr. Bail on May 1, 1979, and came to see him for an examination. As a result of the symptoms Held was exhibiting and of a liver function test, Dr. Bail suspected viral hepatitis, as had Dr. Miller.

On the morning of May 6, 1979, Held discovered that she had rectal bleeding and telephoned HCHP. She was advised to come in at once. She was given a scigmoidoscopy and thereafter admitted to the Cambridge City Hospital. Her bleeding was severe and it was necessary for Held to receive a blood transfusion. Later that day Held underwent emergency surgery, during which a part of her large and small intestines, including the ileum (a part of the small intestine), were removed. Laboratory tests made after surgery disclosed that Held was suffering from salmonella typhi, commonly known as typhoid fever. There were a variety of unpleasant aftermaths to the bowel surgery which it is not necessary to detail. It suffices that they support the $50,000 damages award returned by the jury.

An expert witness for Held, Dr. Savitz, testified that a physician conforming to standards of acceptable medical practice would have suspected bacterial infection and would have initiated antibiotic therapy "no later than the third of May and really better by the first of May when she presented with the fever and chills and cough that are described in the record, together with the history of the diarrhea illness ten days to two weeks earlier, and the record of exposure [to] salmonella." That was sufficient to put before the jury the question whether Dr. Bail had "exercised the degree of care and skill of the average qualified" internist. See *Brune v. Belinkoff*, 354 Mass. 102, 109 (1968); *DiNozzi v. Lovejoy*, 20 Mass. App. Ct. 973, 974 (1985). Cf. *Gugino v. Harvard Community Health Plan*, 380 Mass. 464, 468 (1980); *Forlano v. Hughes*, 393 Mass. 502, 506-507 (1984).

Missing from the record is any evidence that intervention with antibiotics on May 3, 1979, would have averted the surgery performed on May 6, 1979. In a medical malpractice action, the plaintiff bears the burden of proving the causal connection between the physician's negligence and the plaintiff's injuries. *Semerjian v. Stetson*, 284 Mass. 510, 512 (1933). *Murphy v. Conway*, 360 Mass. 746, 749 (1972). *Harlow v. Chin*, 405 Mass.

697, 702 (1989). *Glicklich* v. *Spievack*, 16 Mass. App. Ct. 488, 492 (1983). Not a great deal is required to fend off a directed verdict on the issue of causation. It is enough to adduce evidence that there is a greater likelihood or probability that the harm to the plaintiff flowed from conduct for which the defendant was responsible. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 58 (1983). *Harlow* v. *Chin*, 405 Mass. at 702. In medical malpractice cases, however, the jury may not speculate about the possible results of administering or withholding particular therapy. *Murphy* v. *Conway*, 360 Mass. 746, 749 (1972). *Cinis* v. *Post*, 1 Mass. App. Ct. 859, 860 (1973). Thus, as those cases illuminate, if the causation question involves questions of medical science or technology, the jury requires the assistance of expert testimony. See also *Glicklich* v. *Spievack*, 16 Mass. App. Ct. at 492; *Cusher* v. *Turner*, 22 Mass. App. Ct. 491, 497 (1986).

Although the plaintiff's expert, Dr. Savitz, gave his opinion that Held's surgery was a proximate cause of her post-operative difficulties, he did not touch on — nor did any other evidence — whether antibiotics administered on May 3 (or May 1) would probably have averted the need for surgery on May 6. A common sense hunch by the jury that this would be so is not enough. The plaintiff suggests that Dr. Bail did not contest causation, a position which the record refutes. At the close of all the evidence, Dr. Bail moved for a directed verdict, among other reasons, on the ground that, even if he was negligent, the evidence had not established that such negligence caused or contributed to the injuries which the plaintiff sustained. It was not the defendant's burden to produce evidence tending to prove that the defendant's alleged negligence had not caused or contributed to the plaintiff's injury. Proximate cause is part of the plaintiff's burden and may not be assumed. Compare *Woronka* v. *Sewall*, 320 Mass. 362, 365 (1946), and *Hicks* v. *United States*, 368 F.2d 626, 632 (4th Cir. 1966), which dealt with the extent of evidence of proximate cause, not, as here, its absence altogether.

In the absence of that critical element in the case, the motion for judgment notwithstanding the verdict should have been allowed. The judgment is reversed and judgment shall be entered for the defendant.

*So ordered.*

*Joseph P. Musacchio* (*Robert P. Powers* with him) for the defendant.
*Mary John Boylan* for the plaintiff.